ORIGINAL
FILED

2009 DEC 14 P 1: 59

1   Brian Hennessy. State Bar No. 226721
    bhennessy@perkinscoie.com
2   PERKINS COIE LLP
    101 Jefferson Drive
3   Menlo Park, California  94025
    Telephone:  650.838.4300 / Facsimile:  650.838.4350
4
    James McCullagh, *pro hac vice application to follow*
5   jmccullagh@perkinscoie.com
    Joseph Cutler, *pro hac vice application to follow*
6   jcutler@perkinscoie.com
    PERKINS COIE LLP
7   1201 Third Avenue, Suite 4800
    Seattle, WA  98101
8   Telephone:  206.359.8000
    Facsimile:  206.359.9000
9
    Attorneys for Plaintiff
10     FACEBOOK, INC.

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                       SAN JOSE DIVISION

14                                          C09   05842   JF

15  FACEBOOK, INC., a Delaware          Case No.
    corporation,                                      PVT
16                                       **COMPLAINT FOR:**
                       Plaintiff,
17                                       **1) VIOLATION OF 15 U.S.C. § 7701, *et seq*,**
        v.                               **CONTROLLING THE ASSAULT OF NON-**
18                                       **SOLICITED PORNOGRAPHY AND**
    JEREMI FISHER; PHILIP                **MARKETING ACT OF 2003 ["CAN-SPAM"];**
19  POREMBSKI; RYAN SHIMEALL;
    and JOHN DOES 1-25, individuals;     **2) VIOLATION OF 18 U.S.C. § 1030, THE**
20  and CHOKO SYSTEMS LLC;               **COMPUTER FRAUD AND ABUSE ACT;**
    HARM, INC.; PP WEB SERVICES
21  LLC; iMEDIA ONLINE SERVICES          **3) VIOLATION OF CALIFORNIA BUSINESS**
    LLC; and JOHN DOES 26-50,            **AND PROFESSIONAL CODE § 22948, THE**
22  corporations,                        **CALIFORNIA ANTI-PHISHING ACT OF 2005;**

23                     Defendants.       **4) VIOLATION OF CALIFORNIA PENAL**
                                         **CODE § 502, THE CALIFORNIA**
24                                       **COMPREHENSIVE COMPUTER DATA**
                                         **ACCESS AND FRAUD ACT; AND**
25
                                         **5) BREACH OF CONTRACT**
26
                                         **[DEMAND FOR JURY TRIAL]**
27

28

LEGAL14911765.10                    -1-                    COMPLAINT
                                                           Case No. _____

For its complaint, Facebook, Inc. ("Facebook") alleges as follows:

## I.   INTRODUCTION

1.   This action arises from Defendants' repeated and recently escalated theft and misuse of the usernames and passwords of Facebook users to gain unauthorized access to Facebook's network and send a substantial number of unsolicited commercial messages ("spam") to Facebook users through the Facebook network. Defendants' spam directs unsuspecting recipients—Facebook users—to third-party commercial websites that pay Defendants for driving traffic to their websites. Even more egregiously, some of Defendants' spam directs recipients to a "phishing" website – a website that deceives Facebook users into divulging personal information, including the usernames and passwords they use to access the Facebook website.

2.   Facebook is the most popular social networking site on the Internet with more than 350 million active users worldwide. Founded in February 2004, Facebook is a "social utility" – a network that helps people communicate more effectively and efficiently with their friends, family and coworkers. The company develops technologies that facilitate the sharing of information through the "social graph" – the digital mapping of people's real-world social connections. Anyone 13 years of age or older and in high school or college, or age 18 and older can sign up for Facebook and interact with the people they know.

3.   In addition to providing users with an array of tools for communicating with friends, family and coworkers, Facebook is vigilant about protecting the privacy and security of its users and its network. User privacy is a top priority for Facebook. Facebook tightly controls access to its network and the data housed thereon, and leads the industry in giving people tools to control the information they share and with whom they choose to share it. Users can share and restrict information based on specific friends or friend lists, and can designate who may communicate with them using Facebook's messaging options. Facebook also enforces a variety of security policies, including a prohibition on soliciting or sharing user login information (username and password) or accessing other users' accounts.

4.   Along with these powerful privacy options and security measures, Facebook devotes significant resources to combat unauthorized use of its website and service. Despite these

1   measures, Facebook's widespread popularity attracts Internet spammers and "phishers," such as

2   Defendants, who engage in sophisticated illegal schemes in an attempt to circumvent Facebook's

3   privacy and security measures and exploit Facebook's user-base for personal profit.

4        5.      Defendants' unlawful actions have damaged and continue to damage Facebook.

5   Accordingly, Facebook seeks injunctive and other relief, including but not limited to

6   compensatory, statutory, aggravated and punitive damages, disgorgement of the proceeds of

7   Defendants' scheme, and reasonable attorneys' fees.

8                          II.      PARTIES

9        6.      Plaintiff Facebook is a Delaware corporation with its principal place of business in

10  Palo Alto, California.

11       7.      Defendant Jeremi Fisher is an individual believed to be residing or working at

12  81 Dartwood Avenue, Cheektowaga, New York, 14227.

13       8.      Defendant Philip Porembski is an individual believed to be residing or working at

14  12155 Tributary Point Drive, Apartment 170, Rancho Cordova, California, 95670.

15       9.      Defendant Ryan Shimeall (aka Ryan Shimmel) is an individual believed to be

16  residing or working at 16516 Lafayette Street, Thornton, Colorado, 80602.

17       10.     Defendant Choko Systems LLC is believed to be a corporation operating in the

18  State of New York, owned and operated by Defendant Jeremi Fisher.

19       11.     Defendant Harm, Inc. is believed to be a corporation operating in the State of

20  California, owned and operated by Defendant Philip Porembski.

21       12.     Defendant PP Web Services LLC is a corporation operating and registered in the

22  State of California, owned and operated by Defendant Philip Porembski.

23       13.     Defendant iMedia Online Services LLC is a corporation operating and registered

24  in the State of Colorado, believed to be owned and operated by Defendant Ryan Shimeall.

25       14.     Upon information and belief, the Defendants named herein work in conjunction

26  with other yet unnamed Defendants, who are sued herein as Does 1-50. Through discovery,

27  Plaintiff hopes to identify the true names and capacities of other persons and/or entities that are

28

1  participating in the actions of Defendants as alleged herein. Plaintiff reserves the right to amend

2  this complaint to add these individuals and/or entities when it ascertains their true identities.

3  ### III.   JURISDICTION AND VENUE

4  15.   This Court has federal question jurisdiction of this action under 28 U.S.C. § 1331,

5  because the action alleges violations of the CAN-SPAM Act of 2003 (15 U.S.C. § 7701 *et seq.*)

6  and the Computer Fraud and Abuse Act (18 U.S.C. § 1030). The Court has supplemental

7  jurisdiction over the remaining claims under 29 U.S.C. § 1367.

8  16.   Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial

9  part of the events giving rise to the claims raised in this lawsuit occurred in this District.

10  17.   Jurisdiction and venue are also proper in this Court under California Penal Code

11  § 502(j), which states: "For purposes of bringing a civil or a criminal action under this section, a

12  person who causes, by any means, the access of a computer, computer system, or computer

13  network in one jurisdiction from another jurisdiction is deemed to have personally accessed the

14  computer, computer system, or computer network in each jurisdiction."

15  18.   During all relevant times, Defendants have repeatedly, knowingly, and

16  intentionally accessed or permitted access to Facebook servers located in California in order to

17  access without authorization the accounts of Facebook users and send spam to those users and

18  those users' friends. While accessing Facebook servers and sending spam to Facebook users,

19  Defendants made systematic and continuous contacts with California, and have targeted their

20  wrongful acts at Facebook, which is headquartered in Palo Alto, California. Facebook's servers

21  and offices are present in this judicial district. At all relevant times, Defendants were aware that

22  their illegal acts would harm Facebook and its computer network.

23  ### IV.   INTRADISTRICT ASSIGNMENT

24  19.   Assignment to the San Jose Division of this Court is appropriate under Civil

25  L.R. 3-2, in that the claims asserted herein arose in the county of Santa Clara. Facebook is

26  headquartered in the county of Santa Clara, and has servers located at several locations in this

27  county.

28

# V. FACTS AND BACKGROUND

## A. Facebook Background

20.     Facebook owns and operates the widely popular social website located at http://www.facebook.com. Facebook currently has more than 350 million active users.

21.     To access all the features of its computer network and website, Facebook requires users to register and establish a unique username and password. Only registered users may fully utilize Facebook's services.

22.     Registered users customize their user profiles by adding content, such as personal information, content related to their interests, photographs, and other information that they can then share with others.

23.     Facebook users may only be contacted by other registered Facebook users or Facebook itself.

24.     Users increase their number of Facebook connections by becoming "friends" with other Facebook users. A Facebook friendship is mutual. Both users must agree to be friends before a friend connection is established. In this manner, Facebook creates a virtual social network of interconnected profiles.

25.     Facebook permits users to control access to different portions of their profile. The ability to control access to certain parts of a user's profile, including messaging options, minimizes unwanted communications and increases the privacy and security of Facebook communications.

26.     Secure communication among Facebook users is vital to the integrity of Facebook's computer network as well as to the level of confidence that Facebook users have in using Facebook.

27.     Facebook neither permits nor tolerates the use of its services or site for sending unauthorized commercial communications ("spam").

28.     To ensure secure communications among its users, Facebook assigns each user a unique identification number. When a user accesses his or her Facebook account, Facebook generates and assigns a unique Facebook session identifier ("cookie") to each Facebook login

COMPLAINT
Case No. _____

1  session. This cookie records the unique Internet Protocol address ("IP address") associated with
2  the computer from which a login session originates.

3      29.     The privacy controls provided by Facebook, Facebook's security measures, and
4  the resulting secure communications between and among Facebook users are key aspects of
5  Facebook's success.

6      30.     Facebook allows registered Facebook users to exchange messages in several ways,
7  including by way of "Facebook Chat" (real-time instant messaging), internal messages to another
8  user's "inbox," and messages posted on another user's "Wall."

9      31.     Only registered Facebook users may post Wall messages, and they may only do so
10  on the Walls of friends who have permitted such postings via their privacy settings.  A user's
11  Wall is visible to anyone who can see the user's profile.  A Wall post displays a message, along
12  with a header, that shows the sender's name, profile picture, and the time of the message.

13      32.     Wall messages are particularly attractive to spammers because the spammer can
14  reach multiple Facebook users with a single message.  Moreover, the recipient and others viewing
15  the recipient's Wall are more likely to read the spammer's Wall messages because they are misled
16  into believing they know the sender.

17      33.     Spammers often automate the sending of messages by using short computer scripts
18  to automatically send unsolicited Wall posts ("Wall spam") to every friend of a compromised
19  Facebook account.  Automated Wall spamming is designed for maximum visibility and impact
20  and, taking advantage of the viral nature of Facebook, results in the rapid and widespread
21  dissemination of the spam.

22      34.     As described above, an important aspect of Facebook is that its users generally
23  interact with and receive communications only from their friends.  Users have complete control
24  over those with whom they choose to interact.  As such, Facebook users do not expect to receive
25  – and should not receive – spam in their Facebook accounts.  Indeed, as explained below,
26  Facebook's Statement of Rights and Responsibilities explicitly prohibits sending or posting
27  unauthorized commercial communications (such as spam).

28

**B.    Facebook Statement of Rights and Responsibilities**

35.    Anyone who accesses or uses Facebook's website is bound by Facebook's Statement of Rights and Responsibilities, whether or not they are a registered user of Facebook. Before Facebook activates a user and permits access to certain features of the Facebook website, the user must agree to Facebook's Statement of Rights and Responsibilities. This statement sets forth acceptable uses of Facebook's network and prohibits users from conducting certain activities. Facebook's Statement of Rights and Responsibilities is attached as Exhibit A and can also be found at: http://www.facebook.com/terms.php?

36.    Facebook's Statement of Rights and Responsibilities prohibits anyone who uses or accesses Facebook's site or services from:

a.    collecting users' content or information, or otherwise accessing Facebook, using automated means (such as harvesting bots, robots, spiders, or scrapers) without Facebook's permission;

b.    using Facebook in any unlawful manner or in any other manner that could damage, disable, overburden or impair the Facebook website;

c.    providing false personal information on Facebook or falsely stating or otherwise misrepresenting oneself;

d.    accessing another Facebook user's account;

e.    sending or otherwise posting unauthorized commercial communications (such as spam) on Facebook;

f.    soliciting Facebook login information from Facebook users; and

g.    using Facebook profiles for commercial use.

**C.    Defendants' Unauthorized Activities**

37.    The individual Defendants in this case are Facebook users and during all relevant times have been and are bound by their express agreement to abide by Facebook's Statement of Rights and Responsibilities.

38.    At no time have Defendants received permission from Facebook to conduct any commercial activity on Facebook's website.

39.     Upon information and belief, Defendants have fraudulently gained and continue to fraudulently gain access to legitimate Facebook user accounts ("compromised Facebook accounts") either by misappropriating login information through a phishing website or other method, and/or by acquiring login information from one or more third parties.

40.     Defendants' spam messages would not have been received by the recipients but for the fact that they were sent from Facebook accounts that were "friends" with the recipients.

41.     Upon information and belief, during the months of October 2008 through December 2009, Defendants have been acting in concert to utilize servers and/or computers under their control to access a substantial number of compromised Facebook accounts and to send a substantial number of spam messages in the form of Facebook Wall posts. Upon information and belief, Defendants are collectively profiting from running these spam campaigns.

42.     Defendants have recently and substantially escalated their unlawful and prohibited activities. Defendants are currently and actively pursuing an ongoing spamming and phishing attack on Facebook users through the Facebook network. This escalated attack, which is the latest and most far-reaching in a year-long series of attacks on Facebook orchestrated by the Defendants, is responsible for almost three-fourths of all spam messages sent by the Defendants.

43.     In the current and ongoing spam and phishing campaigns, Defendants use several methods to deceive Facebook users into clicking on the links they send. They send spam advertising a colon cleanser ("Cleanser Campaign"); spam that misleads Facebook users into thinking a video of them had been posted online ("Video Campaign"); and spam that entices users with offers to make money using Google ("Google Campaign").

44.     An example of spam sent during the current and ongoing Cleanser Campaign is:

> I feel really good losing all the weight I just lost in a week! removed my toxins, overall I feel a lot better now! here is the product that I used, I highly suggest it!
> http://jovencitasenculadas.com/search/redirect.php?f=
> http://cleanoutcolon.info?qvx

45.     An example of spam sent during the current and ongoing Video Campaign is:

> 2 LOL! THIS VIDEO OF YOU US SO FUNNY!
> http://sedoparking.com/search/redirect.php?f=http://www.longurls.com/1790?x94

1    46.    An example of spam sent during the current and ongoing Google Campaign is:

2        Hey just wanted to share this with you but i made $852 today with google, so i
3        thought I'd share this with you just visit http://profitg00glecash.info

4    47.    When a Facebook user clicks on the links in these spam messages, they are first

5    redirected through a rapid succession of marketing websites that pay individuals to direct traffic

6    to and through the websites. This is known as an "affiliate marketing scheme." After being

7    redirected through such a scheme, the Facebook users ultimately land at one of several web pages

8    used by Defendants to unlawfully solicit and collect Facebook login information (username and

9    password). These web pages also require payment or fraudulently solicit additional personal

10   information from the Facebook user.

11   48.    Upon information and belief, Defendants are registered as affiliates with an

12   affiliate marketing campaign manager to receive payments from the affiliate marketing scheme

13   through which users are redirected in the Cleanser Campaign, the Video Campaign, and the

14   Google Campaign. Upon information and belief, through these accounts, Defendants are

15   receiving payment for traffic generated by users clicking on the links in the spam messages.

16   49.    Upon information and belief, Defendants are using Defendant Jeremi Fisher's

17   personal Internet service account to log into Mr. Fisher's personal Facebook account, which is

18   used to test the effectiveness of each of these three spam campaigns, and to access Facebook user

19   accounts without authorization in order to send spam to a substantial number of Facebook users.

20   50.    Upon information and belief, Defendants are using a set of servers registered to

21   them or their businesses to automate their current and ongoing campaigns, which have accessed

22   without authorization and continue to access without authorization substantial numbers of

23   Facebook user accounts to send substantial number of spam messages to Facebook users.

24   51.    Upon information and belief, Defendants own the server space being used to send

25   spam messages in these three campaigns and the Internet domains used as the landing pages for

26   the Cleanser Campaign and the Video Campaign, which are hosted on the same servers.

27   52.    Prior to the current and ongoing campaigns, Defendants also conducted at least

28   three other smaller, yet still harmful, spam campaigns on Facebook's networks. As with the

1    current campaign, the previous campaigns involved Defendants sending spam to Facebook users

2    purportedly offering valuable items, services, and/or information for free if the user followed a

3    link to a specified website. However, when the Facebook users clicked on the link in the spam,

4    they were first re-directed through an affiliate marketing scheme that generated revenue for the

5    Defendants and were ultimately directed to websites that required payment and/or were designed

6    to fraudulently obtain ("phish") personal information.

7          53.    In one previous campaign, Defendants sent spam offering a free $500 Macy's gift

8    card ("Macy's Campaign"). Macy's, Inc. – one of the nation's premiere retailers–did not

9    authorize this campaign and, in fact, contacted Facebook to request that Facebook help them to

10   stop the deceptive advertisements.

11         54.    Examples of the Macy's Campaign spam messages are:

12                hey! I got a free $500 Macy's gift card from this webpage
                  www.macyscard4u.com
13
     and
14
                  Hey check this out!  I just got myself a free $500 gift card to
15                Macys.  I'm gonna have so much fun!  You all should get one
                  yourself.  Check out the url below!
16
                  http://www.swfme.com/view/1083902.
17
     Facebook users who clicked on the links in these messages were directed through an affiliate
18
     marketing scheme and eventually arrived at a website requiring sign-up and participation in a
19
     series of promotional offers to qualify for the Macy's gift card. Upon information and belief, the
20
     domains linked to by these spam messages were owned or operated by Defendants.
21
           55.    In a second previous campaign, Defendants sent spam advertising a debt solution
22
     website that, upon information and belief, was used to surreptitiously collect personal information
23
     ("Debt Campaign"). The following is an example of the Debt Campaign spam messages:
24
                  Consolidate bills & lower payments. Learn more about our debt
25                solutions

26                http://google.com/translate_c?hl=en&sl=es&tl=en&u=http://psaran
                  sv.com&usg=
27

28

1    Facebook users who clicked on the links in these messages were directed to a website offering to

2    eliminate debt in exchange for the user's full contact information.  All of the links in these

3    messages directed users to websites hosted on the same servers as those that hosted the websites

4    used in the Macy's Campaign.

5         56.    In a third previous campaign, Defendants sent spam advertising a "secret love

6    crush" ("Crush Campaign") with a link directing users to a website prompting users to surrender

7    their personal information.  The following is an example of a Crush Campaign spam message:

8                        Someone has a secret crush on you! Find out Below!

9                        http://secretluvcrush.com

10   Facebook users who clicked on the links in these messages were redirected to a website offering a

11   "Crush Calculator" that purported to disclose which of the Facebook users' friends had a crush on

12   them.  Upon information or belief, this website was merely a scheme to fraudulently collect users'

13   personal information.  The website linked in these spam messages was hosted on the same server

14   as those used in both the Macy's Campaign and the Debt Campaign.

15        57.    Upon information and belief, Defendants used Defendant Jeremi Fisher's personal

16   Internet service account to log into Mr. Fisher's personal Facebook account, which was used to

17   test the effectiveness of the previous spam campaigns and to send at least the Debt Campaign and

18   Crush Campaign Wall spam.

19        58.    Upon information and belief, as with the Cleanser, Video, and Google Campaigns,

20   Defendants then used a different set of servers to automate their spam campaigns so they would

21   spread virally across the Facebook website and network.

22        59.    Defendants also registered as affiliates with an affiliate marketing campaign

23   manager to receive payments from the affiliate marketing scheme through which users were

24   redirected in the Macy's Campaign.  Upon information and belief, through these accounts,

25   Defendants received payment every time a Facebook user clicked the link in a spam message,

26   regardless of whether the Facebook user actually participated in the commercial offering.

27

28

1       60.    Upon information and belief, Defendants registered as affiliates with other affiliate

2 marketing services and received payment from those services for the traffic generated by the Debt

3 Campaign and the Crush Campaign.

4       61.    On or about October 21, 2008, Facebook sent Defendant Ryan Shimeall a letter

5 demanding that he cease and desist sending spam to Facebook users. On or about October 29,

6 2008, Facebook sent Defendants Jeremi Fisher and Philip Porembski letters demanding that they

7 cease and desist their spamming campaigns. Defendants launched the escalated, current and

8 ongoing Google, Cleanser, and Video campaigns less than one year later.

9       62.    Upon information and belief, all Defendants have knowledge of each other

10 Defendant's unlawful actions and authorize, cooperate with, and/or direct them to take the actions

11 described in this Complaint on behalf of the other Defendants.

12 **D.    Harm to Facebook**

13       63.    While most spam is easily identified and ignored, Defendants' use of

14 compromised Facebook accounts has resulted and continues to result in spam attacks that appear

15 to be personal messages from trusted friends. The spam messages do not properly identify the

16 initiators of the messages, nor do they provide clear or conspicuous notice that the messages are

17 advertisements, information on how recipients can opt-out of future messages, or a valid address

18 that recipients can use to contact the Defendants.

19       64.    The large volume of spam – with almost three-fourths of it being sent in

20 approximately the last three months alone – has tainted and continues to taint the Facebook

21 experience for the affected Facebook users.

22       65.    Facebook has suffered and continues to suffer significant harm to its reputation

23 and goodwill due to Defendants' actions. Facebook has already suffered economic damages in

24 excess of $5,000 attributable to the effort and resources used to combat Defendants' spam, to

25 combat Defendants' unauthorized access to Facebook accounts and servers, to prevent further

26 attacks, and to locate and identify the Defendants.

27       66.    Upon information and belief, Defendants have engaged and continue to engage,

28 willfully and maliciously, in unauthorized access to and misappropriation of Facebook computers,

1  servers, systems, networks and data, including network information, Facebook user information,

2  and Facebook user login information – and continue to send spam through Facebook's network

3  even after receiving Facebook's demands to cease and desist their unlawful actions.

4      67.    Upon information and belief, Defendants have sent and continue to send, willfully

5  and maliciously, unsolicited commercial messages in order to defraud Facebook users and profit

6  from their illegal and improper phishing and spamming campaigns.

7      68.    Defendants have benefited and continue to benefit financially from their behavior,

8  while at the same time harming Facebook and its users.

9  ## VI.    CLAIMS FOR RELIEF

10 **COUNT I – VIOLATION OF CONTROLLING THE ASSAULT OF NON-SOLICITED**
**PORNOGRAPHY AND MARKETING ACT OF 2003 ("CAN-SPAM"),**
11 **15 U.S.C. § 7701, *et seq.***

12     69.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth

13 herein, the allegations in all the preceding paragraphs.

14     70.    Facebook is an Internet access service as defined in 15 U.S.C. § 7702(11) because

15 it provides a service that enables users to access content, information, electronic mail, or other

16 services offered over the Internet, and may also include access to proprietary content,

17 information, and other services as part of a package to consumers.

18     71.    Facebook's website and computers operate in interstate and foreign commerce and

19 communication and are therefore protected computers under 15 U.S.C. § 7702(13).

20     72.    The electronic messages initiated by Defendants have been and continue to be

21 "commercial" electronic messages because their primary purpose is the commercial

22 advertisement or promotion of a commercial product or service (including content on an Internet

23 website operated for a commercial purpose) as provided in 15 U.S.C. § 7702(2)(A).

24     73.    Defendants, intentionally, have misled and continue to mislead Facebook users by

25 initiating the transmission of commercial electronic messages through Facebook's computers to

26 Facebook users that contain header information that is materially false or misleading as to the true

27 identity of the senders of the messages in violation of 15 U.S.C. § 7704(a)(3).

28

74. Defendants have initiated and continue to initiate the transmission of commercial electronic messages, in a pattern or practice, through Facebook's computers to Facebook users, that do not contain a functioning return electronic mail address or other Internet-based opt-out mechanism in violation of 15 U.S.C. § 7704(a)(3).

75. Defendants have initiated and continue to initiate the transmission of commercial electronic messages, in a pattern or practice, through Facebook's computers to Facebook users, that do not contain clear and conspicuous identification that the messages are advertisements or solicitations, clear and conspicuous notice of the opportunity to decline to receive further commercial emails from the sender, or a valid physical postal address of the sender in violation of 15 U.S.C. § 7704(a)(5).

76. Defendants have initiated and continue to initiate the transmission of commercial electronic messages, in a pattern or practice, through Facebook's computers to Facebook users, that contain subject headings that are misleading regarding the contents or subject matter of the message and misleading regarding Facebook's connection to the messages in violation of 15 U.S.C. § 7704(a)(2).

77. Facebook is informed and believes, and based thereon alleges, that Defendants initiated and continue to initiate the transmission of the misleading commercial electronic messages with actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that the messages' subject heading is likely to mislead a recipient, acting reasonably under the circumstances.

78. Facebook is informed and believes, and based thereon alleges, that Defendants have initiated and continue to initiate the transmission of commercial electronic messages, in a pattern or practice, through Facebook's computers to Facebook users, that are misleading and unlawful under 15 U.S.C. § 7704(a), as alleged above, or have assisted and continue to assist in the origination of such messages through the provision or selection of addresses to which the messages are transmitted as defined in 15 U.S.C. § 7704(b)(1).

79. Defendants have caused and continue to cause Facebook harm by causing higher-bandwidth utilization; by causing Facebook to expend significant employee time and sums of

1  money on expensive hardware and software repairs and upgrades to protect Facebook users

2  against unsolicited commercial electronic messages; by deterring users and potential users from

3  using Facebook; by damaging Facebook's goodwill and reputation with its customers; and by

4  causing other injuries to Facebook.

5       80.    Facebook is entitled to an injunction prohibiting further violations of CAN-SPAM

6  by Defendants as provided by 15 U.S.C. § 7706(g)(1)(A), since Facebook will continue to suffer

7  immediate and irreparable harm if Defendant's conduct is not enjoined. Facebook has no

8  adequate remedy at law.

9       81.    Facebook is entitled to the greater of its actual monetary loss or statutory damages

10  as provided by 15 U.S.C. § 7706(g)(1)(B), in an amount to be proven at trial.

11       82.    Facebook is entitled to an award of aggravated damages in an amount equal to

12  three times the amount otherwise available pursuant to 15 U.S.C. § 7706(g)(3)(C) because

13  Defendants violated CAN-SPAM willfully and knowingly and because Defendants' unlawful

14  activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

15       83.    Facebook is entitled to reasonable costs, including reasonable attorney's fees as

16  provided by 15 U.S.C. § 7706(g)(4).

17       **COUNT II – COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030, *et seq.***

18       84.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth

19  herein, the allegations in all the preceding paragraphs.

20       85.    Facebook's computers are involved in interstate and foreign commerce and

21  communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

22       86.    On information and belief, Defendants have accessed and continue to access,

23  knowingly and intentionally, Facebook's computers without authorization or in excess of

24  authorization as defined by Facebook's Statement of Rights and Responsibilities in violation of

25  18 U.S.C. § 1030(a)(2).

26       87.    On information and belief, after gaining unauthorized access to Facebook's

27  servers, Defendants have obtained and used, and continue to obtain and use, valuable information

28  from Facebook's protected computers in transactions involving interstate or foreign

communications. This information includes, among other things, Facebook users' friend lists and the means of sending messages to those friends. The use includes accessing Facebook user accounts without authorization, sending messages from Facebook user accounts without authorization, and penetrating user accounts that would not have accepted Defendants' messages had they not originated from the accounts of their confirmed friends.

88.    Defendants knowingly, willfully, and with intent to defraud, have accessed and continue to access Facebook's computers without authorization or in excess of authorization and obtain valuable information from Facebook's protected computers which, on information and belief, Defendants use to obtain something of value in violation of 18 U.S.C. § 1030(a)(2).

89.    Defendants knowingly, willfully, and with intent to defraud, have trafficked and continue to traffick in login information through which computers are accessed without authorization, affecting interstate commerce in violation of 18 U.S.C. § 1030(a)(6).

90.    Defendants' conduct has caused and continues to cause a loss to Facebook during a one-year period in excess of $5,000.

91.    Facebook has been damaged and continues to be damaged by Defendants' actions, including being forced to expend resources to investigate and prevent the unauthorized access and abuse of its computer network. Facebook seeks compensatory and other equitable relief under 18 U.S.C. § 1030(g) in an amount to be proven at trial.

92.    Facebook has suffered and continues to suffer irreparable and incalculable harm and injuries resulting from Defendants' conduct. Such harm will continue unless Defendants are enjoined from further unauthorized use of Facebook's protected computers. Facebook has no adequate remedy at law.

## COUNT III – VIOLATION OF CALIFORNIA'S ANTI-PHISHING ACT OF 2005, CAL. BUS. & PROF. CODE § 22948 *et seq.*

93.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

94.    By creating and directing Facebook users to their "phishing" sites, Defendants have used and continue to use the Internet, their websites, and spam messages to solicit, request,

and induce Facebook users to provide identifying information by representing these pages to be Facebook login pages without the authority or approval Facebook in violation of CAL. BUS. & PROF. CODE § 22948.2.

95. By Defendants' conduct, Facebook has suffered, is suffering, and will continue to suffer irreparable harm and, unless Defendants are enjoined, the irreparable harm to Facebook will continue. Facebook has no adequate remedy at law.

96. Facebook has been and continues to be damaged by Defendants' actions and seeks statutory damages and reasonable attorney's fees and litigation costs under CAL. BUS. & PROF. CODE § 22948.3 in an amount to be proven at trial.

### COUNT IV – CALIFORNIA COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT, CALIFORNIA PENAL CODE § 502(C)

97. Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations contained in all the preceding paragraphs.

98. Defendants have knowingly accessed and without permission used, and continue to knowingly access and without permission use, Facebook's data, computers, computer systems and/or computer network in order to devise and/or execute a scheme to defraud and deceive in violation of CALIFORNIA PENAL CODE § 502(c)(1).

99. Defendants knowingly accessed and without permission took, copied, and/or used, and continue to knowingly access and without permission take, copy, and/or use, data from Facebook's computers, computer systems and/or computer network in violation of CALIFORNIA PENAL CODE § 502(c)(2).

100. Defendants knowingly and without permission used or caused to be used, and are knowingly and without permission using and are causing to be used, Facebook's computer services in violation of CALIFORNIA PENAL CODE § 502(c)(3).

101. Defendants knowingly and without permission accessed and added data to, and knowingly and without permission continue to access and add data to, Facebook's computers, computer systems and/or computer network in violation of CALIFORNIA PENAL CODE § 502(c)(4).

102.    Defendants knowingly and without permission accessed or caused to be accessed, and knowingly and without permission are accessing or causing to be accessed, Facebook's computers, computer systems, and/or computer network in violation of CALIFORNIA PENAL CODE § 502(c)(7).

103.    Facebook suffered and continues to suffer damage as a result of Defendants' violations of the CALIFORNIA PENAL CODE § 502 identified above.

104.    Defendants' conduct has caused and continues to cause irreparable and incalculable harm and injuries to Facebook (including, but not limited to, Facebook's reputation and goodwill) and, unless enjoined, will cause further irreparable and incalculable injury, for which Facebook has no adequate remedy at law.

105.    Defendants willfully violated and are willfully violating CALIFORNIA PENAL CODE § 502 in disregard and derogation of Facebook's rights and the rights of legitimate Facebook users, and their actions as alleged were and are carried out with oppression, fraud and malice.

106.    Pursuant to CALIFORNIA PENAL CODE § 502(e), Facebook is entitled to injunctive relief, compensatory damages, punitive or exemplary damages, attorney's fees, costs and other equitable relief.

### COUNT V – BREACH OF CONTRACT

107.    Plaintiff Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

108.    Use of the Facebook's site and services is governed by and subject to Facebook's Statement of Rights and Responsibilities.

109.    At all times relevant to this dispute, users of Facebook's site and services have been required to agree to Facebook's Statement of Rights and Responsibilities in order to access Facebook's site and services.

110.    Defendants affirmatively accepted and agreed to Facebook's Statement of Rights and Responsibilities.

111.    Facebook's Statement of Rights and Responsibilities is binding on Defendants.

112.   Facebook has performed all conditions, covenants, and promises required of it in accordance with the Statement of Rights and Responsibilities.

113.   Facebook's cease and desist letters reaffirmed that Defendants were and are bound by the Statement of Rights and Responsibilities, and that Defendants' spamming and phishing activities breach the terms of the Statement of Rights and Responsibilties.

114.   Defendants, through their actions as described above, knowingly, willfully, repeatedly and systematically, have breached and continue to breach Facebook's Statement of Rights and Responsibilities by their conduct as alleged in this Complaint. Defendants' breaches include, but are not limited to, misusing Facebook usernames and passwords, sending spam messages, accessing the Facebook accounts and profiles of other Facebook users, impersonating other Facebook users, harvesting Facebook information including login information, and using automated scripts on Facebook's network.

115.   The Defendants' breaches of the Statement of Rights and Responsibilities directly and proximately caused and continue to cause Facebook irreparable and incalculable harm and injury.

116.   Facebook is entitled to injunctive relief, compensatory damages, and punitive damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Facebook prays for the following relief:

A.   For injunctive relief, as follows:  A permanent injunction enjoining and restraining Defendants, and all persons or entities acting as agents of or in concert with them during the pendency of this action and thereafter perpetually, from:

1.   accessing or attempting to access Facebook's website, the Facebook Platform, Facebook computer systems, and/or any offices, properties or facilities owned, operated or occupied by Facebook or its employees;

1        2.      initiating, sending, or procuring the initiation or sending of unsolicited

2                commercial electronic mail messages to Facebook accounts or to Facebook

3                users, including messages in the form of Facebook chat messages,

4                Facebook internal messages, Facebook Wall posts, or any other form of

5                messaging available on or through Facebook or the Facebook Platform;

6        3.      creating any website that solicits Facebook user information, including but

7                not limited to login information;

8        4.      creating any website that mimics the look and feel of Facebook's website;

9        5.      engaging in any activity that disrupts, diminishes the quality of, interferes

10              with the performance of, or impairs the functionality of Facebook's website

11              or services; and

12       6.      engaging in any activity that violates Facebook's Statement of Rights and

13              Responsibilities, or any policies, terms, or guidelines governing the use of

14              the Facebook website, network, and the Facebook Platform.

15    B.    An order requiring Defendants to account for, hold in constructive trust, pay over

16 to Facebook, and otherwise disgorge all profits derived by Defendants from their unlawful

17 conduct and unjust enrichment, as permitted by law;

18    C.    An award to Facebook of damages, including but not limited to, compensatory,

19 statutory, aggravated, and punitive damages, as permitted by law and in such amounts to be

20 proven at trial;

21    D.    An award to Facebook of reasonable costs, including reasonable attorney's fees;

22    E.    For pre- and post-judgment interest as allowed by law; and

23    F.    For such other relief as the Court may deem just and proper.

24

25 DATED:  December 11, 2009            **PERKINS COIE** LLP

26                        By: _____

27                        Attorneys for Plaintiff

28                        FACEBOOK, INC.

1

## JURY DEMAND

2          Pursuant to Federal Rule of Civil Procedure 38(b), plaintiff demands a trial by jury as to

3     all issues so triable in this action.

4

5     DATED:  December 11, 2009                    PERKINS COIE LLP

6                                                  By:

7

8                                                  Attorneys for Plaintiff
                                                   FACEBOOK, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Date of Last Revision: August 28, 2009

## Statement of Rights and Responsibilities

This Statement of Rights and Responsibilities ("Statement") derives from the Facebook Principles, and governs our relationship with users and others who interact with Facebook. By using or accessing Facebook, you agree to this Statement.

1. **Privacy**

   Your privacy is very important to us. We designed our Privacy Policy to make important disclosures about how you can use Facebook to share with others and how we collect and can use your content and information. We encourage you to read the Privacy Policy, and to use it to help make informed decisions.

2. **Sharing Your Content and Information**

   You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings. In addition:

   1. For content that is covered by intellectual property rights, like photos and videos ("IP content"), you specifically give us the following permission, subject to your privacy and application settings: you grant us a non-exclusive, transferable, sub-licensable, royalty-free, worldwide license to use any IP content that you post on or in connection with Facebook ("IP License"). This IP License ends when you delete your IP content or your account unless your content has been shared with others, and they have not deleted it.
   2. When you delete IP content, it is deleted in a manner similar to emptying the recycle bin on a computer. However, you understand that removed content may persist in backup copies for a reasonable period of time (but will not be available to others).
   3. When you add an application and use Platform, your content and information is shared with the application. We require applications to respect your privacy settings, but your agreement with that application will control how the application can use the content and information you share. (To learn more about Platform, read our About Platform page.)
   4. When you publish content or information using the "everyone" setting, it means that everyone, including people off of Facebook, will have access to that information and we may not have control over what they do with it.
   5. We always appreciate your feedback or other suggestions about Facebook, but you understand that we may use them without any obligation to compensate you for them (just as you have no obligation to offer them).

3. **Safety**

   We do our best to keep Facebook safe, but we cannot guarantee it. We need your help to do that, which includes the following commitments:

   1. You will not send or otherwise post unauthorized commercial communications (such as spam) on Facebook.
   2. You will not collect users' content or information, or otherwise access Facebook, using automated means (such as harvesting bots, robots, spiders, or scrapers) without our permission.
   3. You will not engage in unlawful multi-level marketing, such as a pyramid scheme, on Facebook.
   4. You will not upload viruses or other malicious code.
   5. You will not solicit login information or access an account belonging to someone else.
   6. You will not bully, intimidate, or harass any user.
   7. You will not post content that is hateful, threatening, pornographic, or that contains nudity or graphic or gratuitous violence.
   8. You will not develop or operate a third party application containing, or advertise or otherwise market alcohol-related or other mature content without appropriate age-based restrictions.
   9. You will not offer any contest, giveaway, or sweepstakes ("promotion") on Facebook without our prior written consent. If we consent, you take full responsibility for the promotion, and will follow our Promotions Guidelines and all applicable laws.
   10. You will not use Facebook to do anything unlawful, misleading, malicious, or discriminatory.
   11. You will not do anything that could disable, overburden, or impair the proper working of Facebook, such as a denial of service attack.
   12. You will not facilitate or encourage any violations of this Statement.

4. **Registration and Account Security**

   Facebook users provide their real names and information, and we need your help to keep it that way. Here are some commitments you make to us relating to registering and maintaining the security of your account:

   1. You will not provide any false personal information on Facebook, or create an account for anyone other than yourself without permission.
   2. You will not use your personal profile for your own commercial gain (such as selling your status update to an advertiser).
   3. You will not use Facebook if you are under 13.
   4. You will not use Facebook if you are a convicted sex offender.
   5. You will keep your contact information accurate and up-to-date.
   6. You will not share your password, let anyone else access your account, or do anything else that might jeopardize the security of your account.
   7. You will not transfer your account to anyone without first getting our written permission.
   8. If you select a username for your account we reserve the right to remove or reclaim it if we

believe appropriate (such as when a trademark owner complains about a username that does not closely relate to a user's actual name).

5. **Protecting Other People's Rights**

We respect other people's rights, and expect you to do the same.

1. You will not post content or take any action on Facebook that infringes or violates someone else's rights or otherwise violates the law.
2. We can remove any content or information you post on Facebook if we believe that it violates this Statement.
3. We will provide you with tools to help you protect your intellectual property rights. To learn more, visit our How to Report Claims of Intellectual Property Infringement page.
4. If we remove your content for infringing someone else's copyright, and you believe we removed it by mistake, we will provide you with an opportunity to appeal.
5. If you repeatedly infringe other people's intellectual property rights, we will disable your account when appropriate.
6. You will not use our copyrights or trademarks (including Facebook, the Facebook and F Logos, FB, Face, Poke, Wall and 32665), or any confusingly similar marks, without our written permission.
7. If you collect information from users, you will: obtain their consent, make it clear you (and not Facebook) are the one collecting their information, and post a privacy policy explaining what information you collect and how you will use it.
8. You will not post anyone's identification documents or sensitive financial information on Facebook.

6. **Mobile**
   1. We currently provide our mobile services for free, but please be aware that your carrier's normal rates and fees, such as text messaging fees, will still apply.
   2. In the event you change or deactivate your mobile telephone number, you will update your account information on Facebook within 48 hours to ensure that your messages are not sent to the person who acquires your old number.

7. **Payments**

If you make a payment on Facebook or use Facebook Credits, you agree to our Payments Terms.

8. **Special Provisions Applicable to Share Links**

If you include our Share Link button on your website, the following additional terms apply to you:

1. We give you permission to use Facebook's Share Link button so that users can post links or content from your website on Facebook.
2. You give us permission to use such links and content on Facebook.
3. You will not place a Share Link button on any page containing content that would violate this Statement if posted on Facebook.

9. **Special Provisions Applicable to Developers/Operators of Applications and Websites**

If you are a developer or operator of a Platform application or website, the following additional terms apply to you:

1. You are responsible for your application and its content and all uses you make of Platform. This includes ensuring your application or use of Platform meets our Platform Policies and our Advertising Guidelines.
2. Your access to and use of data you receive from Facebook, will be limited as follows:
   1. You will only request data you need to operate your application.
   2. You will have a privacy policy or otherwise make it clear to users what user data you are going to use and how you will use, display, or share that data..
   3. You will make it clear to users what user data you are going to use and how you will use, display, or share that data.
   4. You will not use, display, or share a user's data in a manner inconsistent with the user's privacy settings.
   5. You will delete all data you received from us relating to any user who deauthorizes, disconnects, or otherwise disassociates from your application unless otherwise permitted in our Platform Policies.
   6. You will delete all data you received from Facebook if we disable your application or ask you to do so.
   7. We can require you to update any data you have received from us.
   8. We can limit your access to data.
   9. You will not transfer the data you receive from us (or enable that data to be transferred) without our prior consent.
3. You will not give us information that you independently collect from a user or a user's content without that user's consent.
4. You will make it easy for users to remove or disconnect from your application.
5. You will make it easy for users to contact you. We can also share your email address with users.
6. You will provide customer support for your application.
7. You will not show third party ads or web search boxes on Facebook user profiles or Pages.
8. We give you all rights necessary to use the code, APIs (along with all data received), or tools we provide to you, but only in connection with your application.
9. You will not sell, transfer, or sublicense our code, APIs, or tools to anyone.
10. You will not misrepresent your relationship with Facebook to others.
11. You may use the logos we make available to developers or issue a press release or other public statement so long as you follow our Platform Policies.

12. We can issue a press release describing our relationship with you.
13. You will comply with all applicable laws. In particular you will (if applicable):
    1. have a policy for removing infringing content and terminating repeat infringers that complies with the Digital Millennium Copyright Act.
    2. comply with the Video Privacy Protection Act ("VPPA"), and will obtain explicit, opt-in consent from users prior to sharing with Facebook user data subject to the VPPA. You acknowledge Facebook has no obligations under the VPPA.
14. We do not guarantee that Platform will always be free.
15. You give us all rights necessary to enable your application to work with Facebook, including the right to incorporate content you provide to us into streams, profiles, and user action stories.
16. You give us the right to link to or frame your application and place content, including ads, around your application.
17. We can analyze your application, content, and data for any purpose, including commercial (such as for targeting the delivery of advertisements and indexing content for search).
18. To ensure your application is safe for users, we can audit it.
19. We can create applications that offer similar features and services to, or otherwise compete with, your application.

10. **About Advertisements on Facebook**

Our goal is to deliver ads that are not only valuable to advertisers, but also valuable to you. In order to do that, you agree to the following:

1. You can use your privacy settings to limit how your name and profile picture may be associated with commercial or sponsored content served by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place.
2. We do not give your content or information to advertisers without your consent.
3. You understand that we may not always identify paid services and communications as such.

11. **Special Provisions Applicable to Advertisers**

You can target your specific audience by buying ads on Facebook or our publisher network. The following additional terms apply to you if you place an order through our online advertising portal ("Order"):

1. When you place an Order, you will tell us the type of advertising you want to buy, the amount you want to spend, and your bid. If we accept your Order, we will deliver your ads as inventory becomes available.
2. You will pay for your Orders in accordance with our Payments Terms. The amount you owe will be calculated based on our tracking mechanisms.
3. Your ads will comply with our Advertising Guidelines.
4. We will determine the size, placement, and positioning of your ads.
5. We do not guarantee the activity that your ads will receive, such as the number of clicks you will get.
6. We cannot control how people interact with your ads, and are not responsible for click fraud or other improper actions that affect the cost of running ads.
7. You can cancel your Order at any time through our online portal, but it may take us seven days before the ad stops running.
8. Our license to run your ad will end when we have completed your Order. You understand, however, that if users have interacted with your ads, your ads may remain until the users delete it.
9. We can use your ads and related content and information for marketing or promotional purposes.
10. You will not issue any press release or make public statements about your relationship with Facebook without written permission.
11. We may reject or remove any ad for any reason.

If you are placing ads on someone else's behalf, we need to make sure you have permission to place those ads, including the following:

12. You warrant that you have the legal authority to bind the advertiser to this Statement.
13. You agree that if the advertiser you represent violates this Statement, we may hold you responsible for that violation.

12. **Special Provisions Applicable to Pages**
    1. Pages are special profiles that may only be used to promote a business or other commercial, political, or charitable organization or endeavor (including non-profit organizations, political campaigns, bands, and celebrities).
    2. You may only administer a Facebook Page if you are an authorized representative of the subject of the Page.
    3. Pages can only post content and information under the "everyone" setting.
    4. When you publish content or information to your Page we have no obligation to distribute your content or information to users.
    5. If you use a Fan Box widget off of our site to promote your Page, others will be able to copy and place the widget elsewhere.
    6. You may not place a Fan Box widget in an advertisement.
    7. If you collect user information on your Page, Section 9 of this Statement also applies to you.
    8. If you display advertising on your Page, Section 11 of this Statement also applies to you.

13. **Amendments**
    1. We can change this Statement if we provide you notice (by posting the change on the Facebook Site Governance Page) and an opportunity to comment. To get notice of any future changes to this Statement, visit our Facebook Site Governance Page and become a fan.
    2. For changes to sections 7, 8, 9, and 11 (sections relating to payments, application developers, website operators, and advertisers), we will give you a minimum of three days notice. For all other

changes we will give you a minimum of seven days notice. All such comments must be made on the Facebook Site Governance Page.

3. If more than 7,000 users comment on the proposed change, we will also give you the opportunity to participate in a vote in which you will be provided alternatives. The vote shall be binding on us if more than 30% of all active registered users as of the date of the notice vote.

4. We can make changes for legal or administrative reasons upon notice without opportunity to comment.

## 14. Termination

If you violate the letter or spirit of this Statement, or otherwise create possible legal exposure for us, we can stop providing all or part of Facebook to you. We will notify you by email or at the next time you attempt to access your account. You may also delete your account or disable your application at any time. In all such cases, this Statement shall terminate, but the following provisions will still apply: 2.2, 2.4, 3-5, 8.2, 9.1-9.3, 9.9, 9.10, 9.13, 9.15.1, 9.18, 10.3, 11.2, 11.5, 11.6, 11.9, 11.9, 11.12, 11.13, and 14-18.

## 15. Disputes

1. You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook exclusively in a state or federal court located in Santa Clara County. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions. You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims.

2. If anyone brings a claim against us related to your actions, content or information on Facebook, you will indemnify and hold us harmless from and against all damages, losses, and expenses of any kind (including reasonable legal fees and costs) related to such claim.

3. WE TRY TO KEEP FACEBOOK UP, BUG-FREE, AND SAFE, BUT YOU USE IT AT YOUR OWN RISK. WE ARE PROVIDING FACEBOOK "AS IS" WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. WE DO NOT GUARANTEE THAT FACEBOOK WILL BE SAFE OR SECURE. FACEBOOK IS NOT RESPONSIBLE FOR THE ACTIONS, CONTENT, INFORMATION, OR DATA OF THIRD PARTIES, AND YOU RELEASE US, OUR DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS FROM ANY CLAIMS AND DAMAGES, KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY CLAIM YOU HAVE AGAINST ANY SUCH THIRD PARTIES. IF YOU ARE A CALIFORNIA RESIDENT, YOU WAIVE CALIFORNIA CIVIL CODE §1542, WHICH SAYS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR." WE WILL NOT BE LIABLE TO YOU FOR ANY LOST PROFITS OR OTHER CONSEQUENTIAL, SPECIAL, INDIRECT, OR INCIDENTAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS STATEMENT OR FACEBOOK, EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. OUR AGGREGATE LIABILITY ARISING OUT OF THIS STATEMENT OR FACEBOOK WILL NOT EXCEED THE GREATER OF ONE HUNDRED DOLLARS ($100) OR THE AMOUNT YOU HAVE PAID US IN THE PAST TWELVE MONTHS. APPLICABLE LAW MAY NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY OR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU. IN SUCH CASES, FACEBOOK'S LIABILITY WILL BE LIMITED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW.

## 16. Special Provisions Applicable to Users Outside the United States

We strive to create a global community with consistent standards for everyone, but we also strive to respect local laws. The following provisions apply to users outside the United States:

1. You consent to having your personal data transferred to and processed in the United States.

2. If you are located in a country embargoed by the United States, or are on the U.S. Treasury Department's list of Specially Designated Nationals you will not engage in commercial activities on Facebook (such as advertising or payments) or operate a Platform application or website.

## 17. Definitions

1. By "Facebook" we mean the features and services we make available, including through (a) our website at www.facebook.com and any other Facebook branded or co-branded websites (including sub-domains, international versions, widgets, and mobile versions); (b) our Platform; and (c) other media, software (such as a toolbar), devices, or networks now existing or later developed.

2. By "us," "we" and "our" we mean Facebook, Inc., or if you are outside of the United States, Facebook Ireland Limited.

3. By "Platform" we mean a set of APIs and services that enable applications, developers, operators or services, including Connect and RSS feeds, to retrieve data from Facebook or provide data to us.

4. By "information" we mean facts and other information about you, including actions you take.

5. By "content" we mean anything you post on Facebook that would not be included in the definition of "information."

6. By "data" we mean content and information that third parties can retrieve from Facebook or provide to Facebook through Platform.

7. By "post" we mean post on Facebook or otherwise make available to us (such as by using an application).

8. By "use" we mean use, copy, publicly perform or display, distribute, modify, translate, and create derivative works of.

9. By "active registered user" we mean a user who has logged into Facebook at least once in the previous 30 days.

10. By "application" we mean any application or website (including Connect sites) that uses or accesses Platform, as well as anything else that receives data.

## 18. Other

1. This Statement makes up the entire agreement between the parties regarding Facebook, and supersedes any prior agreements.
2. If any portion of this Statement is found to be unenforceable, the remaining portion will remain in full force and effect.
3. If we fail to enforce any of this Statement, it will not be considered a waiver.
4. Any amendment to or waiver of this Statement must be made in writing and signed by us.
5. You will not transfer any of your rights or obligations under this Statement to anyone else without our consent.
6. All of our rights and obligations under this Statement are freely assignable by us in connection with a merger, acquisition, or sale of assets, or by operation of law or otherwise.
7. Nothing in this Statement shall prevent us from complying with the law.
8. This Statement does not confer any third party beneficiary rights.

You may also want to review the following documents:

Privacy Policy: The Privacy Policy is designed to help you understand how we collect and use information.
Payment Terms: These additional terms apply to all payments made on or through Facebook.
About Platform: This page helps you better understand what happens when you add a third-party application or use Facebook Connect, including how they may access and use your data.
Platform Policies: These guidelines outline the policies that apply to applications, including Connect sites.
Advertising Guidelines: These guidelines outline the policies that apply to advertisements placed on Facebook.
Promotions Guidelines: These guidelines outline the policies that apply if you have obtained written pre-approval from us to offer contests, sweepstakes, and other types of promotions on Facebook.
How to Report Claims of Intellectual Property Infringement
How to Appeal Claims of Copyright Infringement

To access the Statement of Rights and Responsibilities in several different languages, please use the following links:

French translation (Français)
Italian translation (Italiano)
German translation (Deutsch)
Spanish translation (Español)

Facebook © 2009   English (US)          About  Advertising  Developers  Careers  Terms  Blog  Widgets  ■  Find Friends  Privacy  Mobile  Help