1   Brian Hennessy, State Bar No. 226721
    bhennessy@perkinscoie.com
2   PERKINS COIE LLP
    101 Jefferson Drive
3   Menlo Park, California  94025
    Telephone:  650.838.4300
4   Facsimile:  650.838.4350

5
    James McCullagh, *pro hac vice application to follow*
6   jmccullagh@perkinscoie.com
    Joseph Cutler, *pro hac vice application to follow*
7   jcutler@perkinscoie.com
8   PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
9   Seattle, Washington  98101
    Telephone:  206.359.8000
10  Facsimile:  206.359.9000

11  Attorneys for Plaintiff
      FACEBOOK, INC.
12

13                  **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15                         **SAN JOSE DIVISION**

16

17  FACEBOOK, INC., a Delaware              Case No. C 09-05842 JF
    corporation,
18                                          **PLAINTIFF FACEBOOK'S NOTICE OF**
                     Plaintiff,             **MOTION AND MOTION FOR**
19                                          **TEMPORARY RESTRAINING ORDER**
          v.
20
    JEREMI FISHER; PHILIP POREMBSKI;
21  RYAN SHIMEALL; and JOHN DOES 1-         Before:    Hon. Jeremy Fogel
    25, individuals; and CHOKO SYSTEMS
22  LLC; HARM, INC.; PP WEB SERVICES
    LLC, iMEDIA ONLINE SERVICES LLC,
23  and JOHN DOES 26-50, corporations,
24
                     Defendants.
25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................1

PLAINTIFF FACEBOOK, INC.'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION FOR TEMPORARY
RESTRAINING ORDER ...........................................................................................3

I.      INTRODUCTION ......................................................................................................3

II.     REQUESTED RELIEF ..............................................................................................4

III.    STATEMENT OF FACTS .........................................................................................5

        A.      Facebook Background ....................................................................................5

        B.      Defendants' Unauthorized Activities.............................................................6

IV.     ARGUMENT ..............................................................................................................7

        A.      Standard for Issuing a Temporary Restraining Order.....................................7

        B.      Facebook Is Likely to Succeed on the Merits and Will Suffer Irreparable
                Harm if the Defendant Is Not Restrained .......................................................8

                1.      Facebook Is Likely to Succeed on the Merits...................................8

                2.      Facebook Will Suffer Irreparable Harm if Defendants Are Not
                        Restrained ......................................................................................15

        C.      Even if There Are Serious Questions on the Merits, the Balance of
                Hardships Tips Sharply in Facebook's Favor...............................................16

        D.      The Public Interest Favors Facebook's Relief..............................................17

        E.      Minimal Bond Is Appropriate......................................................................18

V.      CONCLUSION.........................................................................................................18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aitken v. Commc'ns Workers of Am.*, 496 F. Supp. 2d 653 (E.D. Va. 2007) ...................................9

*Amoco Prod. Co. v. Village of Gambell, Ala.*, 480 U.S. 531 (1987) ...............................................17

*Diamontiney v. Borg*, 918 F.2d 793 (9th Cir. 1990) ........................................................................8

*Facebook v. ConnectU, LLC*, 489 F. Supp. 2d 1087 (N.D. Cal. 2007) .........................................11

*Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391 (9th Cir. 1992) ....................................................7

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ..........................................7, 16

*Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846 (9th Cir. 2001) ....................................7

*MySpace v. Sanford Wallace*, 498 F. Supp. 2d 1293 (C.D. Cal. 2007) ...................................passim

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 235 F. Supp. 2d 1143 (W.D. Wash. 2002) ..........................................................................................................................................7

*Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ............................................................................................................................................15

*Stuhlberg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) .................15

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995) ...............................15

*Westlands Water Dist. v. Natural Res. Def. Council*, 43 F.3d 457 (9th Cir. 1994) ........................7

**Statutes**

15 U.S.C. § 7701 *et seq.* ...................................................................................................................8

15 U.S.C. § 7701(a) ........................................................................................................................17

15 U.S.C. § 7704(a)(1) .....................................................................................................................9

15 U.S.C. § 7704(a)(1)(A) ...............................................................................................................9

15 U.S.C. § 7704(a)(2) .....................................................................................................................9

15 U.S.C. § 7704(a)(3) ...................................................................................................................10

15 U.S.C. § 7704(a)(5) ...................................................................................................................10

15 U.S.C. § 7704(a)(6) .....................................................................................................................9

15 U.S.C. § 7704(b)(3) ...................................................................................................................10

**TABLE OF AUTHORITIES**
(continued)

Page

15 U.S.C. § 7706(g)(1)(A) ................................................................8

18 U.S.C. § 1030 ..........................................................................10

18 U.S.C. § 1030(a)(2) ...................................................................11

18 U.S.C. § 1030(a)(4) ...................................................................11

18 U.S.C. § 1030(a)(5)(A)(i) ............................................................12

18 U.S.C. § 1030(a)(5)(A)(ii) ...........................................................12

18 U.S.C. § 1030(a)(5)(A)(iii) ..........................................................12

18 U.S.C. § 1030(a)(6) .............................................................10, 12

18 U.S.C. § 1030(g) ........................................................................8

Cal. Bus & Prof. Code § 22948.2 .......................................................14

Cal. Penal Code § 502 ....................................................................13

Cal. Penal Code § 502(c) .................................................................11

Cal. Penal Code § 502(c)(1) .............................................................13

Cal. Penal Code § 502(c)(2) .............................................................13

Cal. Penal Code § 502(c)(3) .............................................................13

Cal. Penal Code § 502(c)(4) .............................................................14

Cal. Penal Code § 502(c)(5) .............................................................14

Cal. Penal Code § 502(c)(7) .............................................................14

Cal. Penal Code § 502(e)(1) ..............................................................8

Cal. Penal Code § 503(a) .................................................................17

**Regulations and Rules**

Federal Rule of Civil Procedure 65 ......................................................3

Federal Rule of Civil Procedure 65(b) ...................................................7

Federal Rule of Civil Procedure 65(c) ..................................................18

NOTICE OF MOTION AND MOTION FOR
TRO Case No. C 09-05842 JF

1

## NOTICE OF MOTION AND MOTION

2

TO:     DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT pursuant to Federal Rule of Civil Procedure 65, that on

4

a hearing date set by the Court or as soon as possible, Plaintiff Facebook, Inc. ("Facebook") will

5

move, and hereby moves, for a temporary restraining order against Jeremi Fisher, Philip

6

Porembski, Ryan Shimeall, and Choko Systems LLC, Harm, Inc., PP Web Services LLC, and

7

iMedia Online Services LLC (collectively "Defendants"), restraining and enjoining Defendants'

8

ongoing and escalating phishing and spamming campaign against Facebook and its users.

9

Specifically, Facebook moves to enjoin Defendants, and any of their directors, officers, agents,

10

servants, employees, and persons and entities acting in concert with them, from engaging in the

11

following conduct until the Court may consider Plaintiff's motion for preliminary injunction:

12

     1.     Initiating or procuring transmission of unsolicited commercial electronic messages

13

           ("spam") on or through Facebook's computers, Facebook's website, Facebook's

14

           networks, or to Facebook users;

15

     2.     Accessing or attempting to access Facebook's website, networks, data,

16

           information, user information, profiles, computers, or computer systems;

17

     3.     Soliciting, requesting, or taking any action to induce Facebook users to provide

18

           identifying information or representing that such solicitation, request, or action is

19

           being done with Facebook's authorization or approval;

20

     4.     Retaining any copies, electronic or otherwise, of any Facebook information,

21

           including user login information or passwords, obtained through illegitimate or

22

           unlawful actions;

23

     5.     Engaging in any activity that alters, damages, deletes, destroys, disrupts,

24

           diminishes the quality of, interferes with the performance of, or impairs the

25

           functionality of Facebook's computers, computer system computer network, data,

26

           website, or services;

27

     6.     Engaging in any unlawful activities alleged in this action;

28

7.   Entering or accessing the physical premises or facilities of Facebook or its counsel; or

8.   Engaging in any activity that violates, or encourages, induces or facilitates violations of the Terms of Use attached as Exhibit A to the proposed order.

Facebook also requests that the Court schedule a preliminary injunction hearing at its earliest convenience.

This motion is based upon the grounds that Facebook has demonstrated a likelihood of success on the merits of its claims for violations of the Controlling the Assault on Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7701, et seq., the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, California Penal Code § 502, the California Anti-Phishing Act, California Business & Professions Code § 22948, et seq., and breach of contract; that Facebook is being irreparably harmed, and will continue to be irreparably harmed, if the requested temporary restraining order is not granted; and that the balance of hardships favors entry of the requested temporary restraining order.

This motion is based upon Facebook's Complaint, filed with the Court on December 14, 2009, this Notice of Motion and Motion, the Memorandum of Points and Authorities filed in Support of this Motion, the supporting declarations Joseph Cutler and a Facebook Employee, the [Proposed] Temporary Restraining Order, the materials currently on file in this action, and such argument of counsel as the Court may request.

Dated: December 15, 2009                    **PERKINS COIE** LLP


                                   By:   _____/s/_____
                                          Brian P. Hennessy
                                          *Attorney for Plaintiff Facebook, Inc.*

1
2

**PLAINTIFF FACEBOOK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER**

3

## I.   INTRODUCTION

4

Plaintiff Facebook, Inc. ("Facebook") respectfully moves the Court, pursuant to Federal

5

Rule of Civil Procedure 65, for an order temporarily enjoining Defendants' ongoing and

6

escalating phishing[1] and spamming campaign against Facebook and its users.  Defendants Jeremi

7

Fisher, Philip Porembski, and Ryan Shimeall, individually and through various affiliated

8

corporate entities listed as defendants in this case, continue to target and attack Facebook – the

9

world's largest social network, now with more than 350 million members.

10

Defendants are currently and actively pursuing a sophisticated and multi-faceted attack:

11
12
13

Even now, Defendants continue to

14

phish for Facebook user information and send spam to Facebook users despite explicit warnings

15

from Facebook that their activities violate Facebook's Statement of Rights and Responsibilities

16

("SRR") or any policies, terms, or guidelines governing the use of the Facebook website,

17

network, and the Facebook Platform, and are illegal.

18

In fact, despite these explicit warnings, Defendants' illegal activities have recently and

19

substantially escalated.

20
21
22
23

24

Due to Defendants' willful disregard of the law and Facebook's warnings, and the recent

25

escalation in their attacks on Facebook and its users, Facebook seeks injunctive relief to prevent

26

further irreparable damage to it and its users.  Absent the Court's intervention, Defendants will be

27
28

---

[1] "Phishing" describes the attempt to acquire sensitive information such as usernames and passwords by masquerading as a trustworthy entity in an electronic communication.

1    able to continue and further escalate their illegal activities unfettered, thereby severely harming

2    Facebook and its users.

3                              **II.    REQUESTED RELIEF**

4         Plaintiff Facebook moves to enjoin Defendants, and any of their directors, officers, agents,

5    servants, employees, and persons and entities acting in concert with them, from engaging in the

6    following conduct until the Court may consider Plaintiff's motion for preliminary injunction:

7         7.  Initiating or procuring transmission of unsolicited commercial electronic messages

8             ("spam") on or through Facebook's computers, Facebook's website, Facebook's

9             networks, and/or to Facebook users, including messages in the form of Facebook chat

10            messages, Facebook internal messages, Facebook Wall posts, or any other form of

11            messaging available on or through Facebook or the Facebook Platform;

12        8.  Accessing or attempting to access Facebook's website, the Facebook Platform,

13            Facebook networks, data, information, user information, profiles, computers,

14            computer systems and/or any offices, properties or facilities owned, operated or

15            occupied by Facebook or its employees;

16        9.  Soliciting, requesting, or taking any action to induce Facebook users to provide

17            identifying information or representing that such solicitation, request, or action is

18            being done with Facebook's authorization or approval;

19        10. Retaining any copies, electronic or otherwise, of any Facebook information, including

20            user login information or passwords, obtained through illegitimate or unlawful actions;

21        11. Engaging in any activity that alters, damages, deletes, destroys, disrupts, diminishes

22            the quality of, interferes with the performance of, or impairs the functionality of

23            Facebook's computers, computer system, computer network, data, website or services;

24        12. Engaging in any unlawful activities alleged in this action;

25        13. Disposing of any assets procured through the activities alleged in the Complaint;

26        8.  Entering or accessing the physical premises or facilities of Facebook or its counsel; or

27

28

1        9.   Engaging in any activity that violates Facebook's Statement of Rights and

2            Responsibilities, or any policies, terms, or guidelines governing the use of the

3            Facebook website, network, and the Facebook Platform.

4    Facebook further requests that the Court schedule a preliminary injunction hearing at its earliest

5    convenience.

6    ### III.    STATEMENT OF FACTS

7    **A.    Facebook Background**

8         Facebook owns and operates the widely popular social networking website located at

9    http://www.facebook.com. Declaration of Facebook Employee[2] ("Facebook Decl.") ¶ 2.

10   Facebook currently has more than 350 million active users. *Id.* Users must register with

11   Facebook, agree to its Statement of Rights and Responsibilities ("SRR"), and obtain a unique

12   username and password before being granted full access to the Facebook website. *Id.* ¶ 4. Only

13   registered users may fully utilize Facebook's services, which include accessing user profiles,

14   inviting other Facebook users to be "friends," sending messages on Facebook, and using

15   applications on Facebook's developer platform. *Id.*

16        Facebook users have complete control over those with whom they interact on Facebook.

17   *Id.* ¶ 6. Facebook users have the ability to control access to their user profiles, including the site's

18   various messaging options. *Id.* Privacy controls and secure communications among Facebook

19   users are vital to the integrity of Facebook's proprietary network as well as to the level of

20   confidence that users have in using Facebook. *Id.* ¶ 7. The privacy controls provided by

21   Facebook, Facebook's security measures, and the resulting secure communications between and

22   among Facebook users are key aspects of Facebook's success. *Id.*

23        Facebook does not tolerate or permit the use of its services or website for sending spam.

24   *Id.* ¶ 8. Facebook's SRR, which bind anyone who uses or accesses Facebook's website, explicitly

25   prohibit any unsolicited or unauthorized advertising, solicitations, promotions, junk mail, spam,

26   chain letters, or pyramid schemes. Compl. Ex. A. Facebook's SRR also prohibit, among other

27

28        [2] To protect the identity and safety of the employee who handles Facebook's security matters, he or she will be referred to herein as "Facebook Employee."

1    things, (1) collecting users' content of information or otherwise accessing Facebook using

2    automated means (such as harvesting, bots, robots, spiders, or scrapers) without Facebook's

3    permission; (2) using Facebook in an unlawful manner or in any other manner that could damage,

4    disable, overburden, or impair the Facebook website; (3) providing false personal information on

5    Facebook or falsely stating or otherwise misrepresenting oneself; (4) accessing another Facebook

6    user's account; (5) sending or otherwise posting spam on Facebook; (6) soliciting Facebook login

7    information from Facebook users; and (7) using Facebook profiles for commercial use. *Id.*

8    **B.**     **Defendants' Unauthorized Activities**

9        Defendants are Facebook users and during all relevant times agreed to abide by

10    Facebook's SRR. Facebook Decl. ¶ 5. At no time have Defendants received permission from

11    Facebook to conduct any commercial activity on Facebook's website. *Id.* ¶ 9.

12        Defendants' attack on Facebook is sophisticated, constantly evolving, and quickly

13    escalating. *Id.* ¶ 10.



17                            *Id.*

18    This escalation is the latest round in a more than yearlong spamming and phishing campaign by

19    Defendants targeted at Facebook and Facebook users. *Id.* ¶¶ 10-11.

23                             The spam will

24    include a message such as "Hey just wanted to share this with you but I made $854 today with

25    google, so I thought I'd share this with you just visit http://profitg00glecash.info." *Id.* ¶ 15.

26    When a Facebook user receives the spam message and clicks on the embedded link, he or she is

27    then rapidly redirected through a series of websites that pay Defendants for the traffic generated

28    from the link in the spam message. Declaration of Joseph P. Cutler ("Cutler Decl.") ¶ 6.

1    Following this redirection, the user's browser lands at a "phishing" website designed to

2    trick the user into divulging ███████████████████████████████████████

3    ███████. Facebook Decl. ¶ 15.  Some of Defendants' websites █████████

4    ███████████████████ while others entice users to ██████████████████ with promises

5    of free computers, colon cleansers, money-making schemes, free ringtones, or IQ tests. *Id* ¶ 16.

6    ████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████

8    ███████████████████████████████████████████████. Cutler Decl.

9    ¶¶ 4-5, 7; Facebook Decl. ¶ 15.  This cycle then repeats, leading to a rapidly expanding and ever-

10   increasing amount of ██████████████████████ and spam.

11       Facebook has explicitly warned Defendants that their activity violates Facebook's SRR

12   and that their activity is illegal.  Cutler Decl. ¶¶ 2-3.  Despite this warning, Defendants' phishing

13   and spamming has not only persisted, but has escalated.  Facebook Decl. ¶ 10.

## IV.    ARGUMENT

### A.    Standard for Issuing a Temporary Restraining Order

16       Federal Rule of Civil Procedure 65(b) authorizes temporary restraining orders, which are

17   governed by the same standards that apply to preliminary injunctions.  A plaintiff is entitled to

18   preliminary injunctive relief when it demonstrates either (1) a combination of "probable success

19   on the merits" and "the possibility of irreparable injury," or (2) the existence of "serious questions

20   going to the merits," where the "balance of hardships tips sharply in [the plaintiff's] favor."

21   *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000) (internal quotation

22   marks and citation omitted).

23       These are not separate tests but a continuum of discretion "in which the required

24   probability of success on the merits decreases as the degree of harm increases." *Nat'l Wildlife*

25   *Fed'n v. Nat'l Marine Fisheries Serv.*, 235 F. Supp. 2d 1143, 1151 (W.D. Wash. 2002) (quoting

26   *Westlands Water Dist. v. Natural Res. Def. Council*, 43 F.3d 457, 459 (9th Cir. 1994)).  Also,

27   where the public interest is involved, courts consider whether the public interest favors the

28   plaintiff's requested relief. *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

1     An adequate showing under either alternative formulation is satisfactory to obtain the

2  requested preliminary relief. *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 850-51

3  (9th Cir. 2001). Also, the moving party does not need to show actual harm, only the threat of

4  irreparable harm. *Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990). Finally, the federal

5  and state statutes on which Facebook bases its claims expressly allow for injunctive relief. *See* 15

6  U.S.C. § 7706(g)(1)(A); 18 U.S.C. § 1030(g); Cal. Penal Code § 502(e)(1).

7     In this case, Facebook is entitled to a temporary restraining order because Facebook is

8  likely to prevail on the merits of its claims and will suffer irreparable injury if Defendants'

9  injurious ongoing activity is not immediately enjoined. Even if there are questions on the merits,

10  the balance of hardships tips sharply in Facebook's favor and entitles Facebook to a temporary

11  restraining order. Under either formulation, the public interest favors Facebook's relief.

12  Injunctive relief is also authorized by the statutes that provide the basis for these claims.

**B.    Facebook Is Likely to Succeed on the Merits and Will Suffer Irreparable Harm if the Defendant Is Not Restrained.**

**1.    Facebook Is Likely to Succeed on the Merits**

As Facebook has combated Defendants' illegal and unauthorized actions, it has also

tracked and investigated their spamming, phishing, unauthorized access, and monetization

activities over the past year. Thus, even prior to discovery, Facebook has assembled sufficient

evidence to show Defendants' illegal activities. Based on its collected evidence, as partially

detailed in the declarations submitted with this motion and memorandum, Facebook is likely to

succeed on the merits of the claims asserted in its Complaint.

**a.    CAN-SPAM – 15 U.S.C. § 7701, et seq.**

The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003

("CAN-SPAM") allows Internet access services to bring actions alleging violations of

15 U.S.C. §§ 7701, et seq. ████████████████████████████

███████████████████████ Facebook Decl. ¶ 10.[3]  Facebook has

gathered evidence of the following violations:

### (i)     15 U.S.C. § 7704(a)(1) – Materially False Header Information

15 U.S.C. § 7704(a)(1) prohibits the transmission of commercial electronic mail messages

containing or accompanied by materially false or materially misleading information headers.  A

header is "materially" misleading if it impairs the ability of the recipient to locate or respond to

the person who initiated the message. 15 U.S.C. § 7704(a)(6).[4]  A header that is technically

accurate may nevertheless be misleading if the header information was obtained fraudulently.

15 U.S.C. § 7704(a)(1)(A).

In violation of 15 U.S.C. § 7704(a)(1), Defendants' spam messages contain information

headers that are materially false and misleading, because they make it appear as if the spam

originated from legitimate Facebook users, when in fact it comes from the Defendants.  Facebook

Decl. ¶¶ 12, 15-16.  A reasonable person viewing Defendants' spam would incorrectly conclude

that the user whose name appears on the message was the sender. *Id.*  Thus, even though the

message technically came from a legitimate Facebook user's account, the headers are materially

misleading because Defendants fraudulently ████████████████████████

████████████ *Id.*; *MySpace*, 498 F. Supp. 2d at 1301-02 ("hijacking" member

accounts to send out mass email messages is prohibited under § 7704(a)(1) even where the header

might be accurate).

### (ii)     15 U.S.C. § 7704(a)(2) – Misleading Subject Headings

15 U.S.C. § 7704(a)(2) prohibits the transmission of commercial electronic mail messages

to a protected computer (a computer used in interstate or foreign commerce or communication)

with misleading subject headings.  Defendants' have violated and continue to violate this statute

by sending, and continuing to send, spam messages with misleading subject headings.  Recipients

---

[3] *See MySpace v. Wallace*, 498 F. Supp. 2d 1293, 1301-02 (C.D. Cal. 2007) (holding that electronic mail and related posts using a website's internal account addresses are within the scope of CAN-SPAM).
[4] *See also Aitken v. Commc'ns Workers of Am.*, 496 F. Supp. 2d 653, 667 (E.D. Va. 2007) (finding that an inaccurate "From:" line that affects an objective recipient's opinion of the value of the message is materially misleading).

are led to believe the messages are about commercial offers for free computers, free ringtones, colon cleansers, money-making schemes, or IQ tests, when in fact they lead recipients to a "phishing" website completely unrelated to the subject headings.  Facebook Decl. ¶¶ 16-17.

### (iii) 15 U.S.C. § 7704(a)(3) – No "Opt Out" Mechanism

15 U.S.C. § 7704(a)(3) prohibits the transmission of commercial electronic messages to a protected computer that does not provide a means for the recipient to opt out of future messages. In violation of this statute, none of Defendants' ███████████████ spam messages contain valid opt-out mechanisms.  They do not include a return email address or other Internet-based opt-out mechanism as required by statute.  Facebook Decl. ¶¶ 10, 15; *MySpace*, 498 F. Supp. 2d at 1302 (finding that use of "hijack[ed]" profiles eviscerates ability to request that no further messages be sent, in violation of § 7704(a)(3)).

### (iv) 15 U.S.C. § 7704(a)(5) – No Required Notices

15 U.S.C. § 7704(a)(5) requires (1) clear and conspicuous identification that the message is an advertisement or solicitation, (2) clear and conspicuous notice of the opportunity to decline to receive further commercial electronic mail messages, and (3) a valid physical postal address for the sender.  Defendants have violated and continue to violate this statute because their spam messages do not meet any of these three requirements.  Facebook Decl. ¶¶ 10, 15-16; *MySpace*, 498 F. Supp. 2d at 1303-04.

### (v) 15 U.S.C. § 7704(b)(3) – Aggravating Relay and Retransmission

15 U.S.C. § 7704(b)(3) provides that it is an aggravated violation of CAN-SPAM to relay or retransmit unlawful commercial electronic mail messages from Facebook's protected computers and computer network without authorization.  ████████████████████

████████████████████████████████████████  Facebook Decl. ¶¶ 10, 14-16, 20.

### b. The Computer Fraud and Abuse Act, 18 U.S.C. § 1030

The Computer Fraud and Abuse Act ("CFAA") provides a private right of action for the knowing and unauthorized access of a computer used in interstate commerce that causes loss or

1   damage in excess of $5,000.  The CFAA also allows claims based upon attempted violations.

2   18 U.S.C. § 1030(a)(6).

3         Throughout their ongoing cycle of spamming, phishing, unauthorized access, and

4   monetary profit, Defendants have been accessing and continue to access Facebook's computers

5   and network without authorization.[5]  Facebook Decl. ¶¶ 4, 7-8, 9-11, 20.  Moreover, Defendants

6   acted and continue to act knowingly, by testing spam, ███████████████████████████

7   ████████  sending spam, and collecting payment for these activities.  *Id.* ¶¶ 12-17; Cutler Decl.

8   ¶¶ 2-3, 6-7.  Facebook has been forced to expend resources in excess of $5,000 to investigate and

9   attempt to counter Defendants' unauthorized ████████████████████████████

10  ████████████████████████ Defendants' illegal and unauthorized activities.

11  Facebook Decl. ¶ 18.

12        Facebook has gathered evidence of the following CFAA violations:

13        **(i)      18 U.S.C. § 1030(a)(2) – Purposeful Access and Damage**

14        18 U.S.C. § 1030(a)(2) prohibits the intentional accessing of protected computers without

15  authorization or exceeding one's authorized access and causing losses of more than $5,000.

16  Defendants have repeatedly violated this statute by purposefully accessing and continuing to

17  access the Facebook website after violating numerous provisions of Facebook's SRR and ███████

18  █████████████████████████████ Facebook Decl. ¶¶ 4, 8, 10-11, 18-19.

19        **(ii)     18 U.S.C. § 1030(a)(4) – Knowing Access with Intent to Defraud**

20        18 U.S.C. § 1030(a)(4) prohibits knowingly, and with the intent to defraud accessing a

21  protected computer without authorization or exceeding authorized access, to further a fraud and

22  obtain more than $5,000 in value.  Defendants repeatedly accessed, and continue to access,

23  Facebook's protected computers, cloaked as legitimate users, to send fraudulent spam messages

24  designed to lure users to a phishing website and thereafter defraud users through sham incentives

25  _____

26        [5] Defendants violated at least seven provisions of Facebook's SRR, triggering the automatic
    revocation of their license to access Facebook.  *See supra* Section III.  Therefore, Defendants' use of the
    Facebook site constitutes unauthorized access.  Facebook Decl. ¶ 4, 7-8, 9-11, 20; *Facebook v. ConnectU,*

27  *LLC*, 489 F. Supp. 2d 1087, 1090-91 (N.D. Cal. 2007) (finding that, under Cal. Penal Code § 502(c),
    where terms of use prohibit an activity and an individual engages in the activity, the activity is "without

28  permission").

1  specifically designed to trick users into providing ██████████████████
2  ████████████████ and third-party pay-per-click websites, where the induced clicks result
3  in additional earnings for defendants.  Facebook Decl. ¶¶ 10-16; Cutler Decl. ¶ 6.
4  ████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████
6  ████████████████████████ *See* Facebook Decl. ¶ 18-20.

7         **(iii)**    **18 U.S.C. § 1030(a)(5)(A)(i) – Knowing Malicious Transmission**
8         18 U.S.C. § 1030(a)(5)(A)(i) prohibits knowingly transmitting a program or code and
9  intentionally causing damage without authorization to a protected computer and causing
10  aggregate loss of more than $5,000.  Defendants are knowingly accessing Facebook ████
11  ████████████████████████gain unauthorized access to the Facebook network,
12  and send bulk spam through compromised Facebook accounts.  Facebook Decl. ¶¶ 10-11, 17.
13  Defendants' clear intent is to continue to violate Facebook's SRR and damage Facebook's
14  relationship with its users.  Id. ¶¶ 7, 10-11, 14.  In fact, as a result of Defendants' ongoing
15  campaign, ████████████████████████████████████████████████
16  ████████████████████████████████████ Id. ¶ 19.

17         **(iv)**    **18 U.S.C. § 1030(a)(5)(B), (C) – Recklessly Causing Losses**
18         18 U.S.C. § 1030(a)(5)(A)(ii) prohibits intentionally accessing protected computers (a)
19  without authorization, and recklessly causing an aggregate loss of $5,000 or more, or (b) with
20  authorization and causing aggregate damage or loss of $5,000 or more.  Defendants continue to
21  violate 18 U.S.C. § 1030(a)(5)(B) by repeatedly accessing Facebook's computers without
22  authorization and recklessly causing more than $5,000 in harm to Facebook.  Id. ¶¶ 10, 18.  Even
23  if Defendants acted with authorization, they have violated 18 U.S.C. § 1030(a)(5)(C) because
24  they have caused over $5,000 of aggregated damage to Facebook through their actions.  Id. ¶ 18.

25         **(v)**    **18 U.S.C. § 1030(a)(6) – Trafficking Authentication Credentials**
26         18 U.S.C. § 1030(a)(6) prohibits knowingly, and with the intent to defraud, trafficking, in
27  a way that affects interstate commerce, in passwords or login information through which one can
28  access a protected computer without authorization, and causing losses of more than $5,000.

NOTICE OF MOTION AND MOTION FOR TRO
Case No. C 09-05842 JF

1 ████████████████████████████████████████████████████and

2 use them to further their fraud on Facebook and its users.  Facebook Decl. ¶¶ 11, 14-16.

3 █████████████████████████████ disguise their identity and masquerade as

4 legitimate Facebook users while sending ██████ spam messages, phishing for █████

5 ██████, and increasing their payout by driving traffic to third-party websites that pay them for

6 the traffic referred.  Id. ¶¶ 10-11, 14-16.

c.      **California Penal Code § 502**

8       The California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code

9 § 502, provides a private right of action for owners of computers, computer systems, computer

10 networks, computer programs, and proprietary data to bring actions for knowing violations.  As

11 discussed *supra* in Section IV(B)(1)(b), Defendants have been accessing Facebook's computers

12 and network without authorization or in excess of their authorization ██████████████

13 ████.  Defendants have executed and continue to execute their unlawful practices knowingly and

14 with the intent to defraud Facebook's users, damage the Facebook network, and gain personal

15 profit.  Facebook Decl. ¶¶ 4, 7-8, 10-11, 13-16; Cutler Decl. ¶¶ 2-3, 6.

16       Facebook has gathered sufficient evidence to establish the following violations of the

17 California Penal Code:

(i)      **California Penal Code § 502(c)(1)**

19       In violation of California Penal Code § 502(c)(1), Defendants have manipulated Facebook

20 user data, ████████████████████████and overburdened Facebook's

21 servers with spam messages.  Defendants perform these actions as part of their ongoing plan to

22 deceive Facebook users and profit from this deception.  Facebook Decl. ¶¶ 10-11, 14-16.

(ii)     **California Penal Code § 502(c)(2)**

24       Defendants have violated and continue to violate California Penal Code § 502(c)(2) by

25 taking and copying data from Facebook's computers, computer systems, or computer networks,

26 ████████████████ and using it to execute their attacks.  *Id.* at ¶¶ 10-11, 14-16.

27

28

1
### (iii)   California Penal Code § 502(c)(3)

2       Defendants have also abused the Facebook service in violation of California Penal Code

3  § 502(c)(3). Defendants have used and are using the Facebook service to send ▮▮▮▮ false

4  and misleading spam messages, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮, and they are profiting from these unlawful actions. Facebook Decl.

6  ¶¶ 10-11, 14-16; Cutler Decl. ¶ 6.

7
### (iv)   California Penal Code § 502(c)(4)

8       Defendants are violating California Penal Code § 502(c)(4) by altering, damaging, and

9  destroying data, that resides or exists on Facebook's computers, as shown by their ▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Facebook Decl. ¶¶ 11, 14.

11
### (v)   California Penal Code § 502(c)(5)

12      In violation of California Penal Code § 502(c)(5) Defendants have disrupted and continue

13 to disrupt the Facebook service by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To date,

14 Defendants have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮ Defendants continue to evolve and escalate their spamming and phishing campaign.

16 Facebook Decl. ¶¶ 10, 20.

17
### (vi)   California Penal Code § 502(c)(7)

18      Defendants' unauthorized access alone constitutes a violation of California Penal Code

19 § 502(c)(7), which prohibits knowingly accessing a computer network without permission.

20
### d.   California Bus. & Prof. Code § 22948, et seq.

21      The California Anti-Phishing Act provides:

22         It shall be unlawful for any person, by means of a Web page,
           electronic mail message, or otherwise through use of the Internet, to
23         solicit, request, or take any action to induce another person to
           provide identifying information by representing itself to be a
24         business without the authority or approval of the business.

25 Cal. Bus & Prof. Code § 22948.2. As seen in some iterations of Defendants' phishing sites,

26 Defendants have incorporated a page that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See*

27 Facebook Decl. ¶ 16. This page ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is owned

28

60406-0005.1001/LEGAL17425242.1           -14-           NOTICE OF MOTION AND MOTION FOR TRO
                                                          Case No. C 09-05842 JF

1  and operated by the Defendants and is designed to deceive users into ████████████

2  ████████████.  *Id.* ¶¶15-16.

3          **e.        Breach of Contract**

4          Use of the Facebook site and Facebook services is governed by and subject to Facebook's

5  SRR, to which all users agree before receiving permission to access Facebook.  *Id.* ¶ 4, 7-8.  In

6  addition to Defendants' acceptance of Facebook's SRR when they registered, they were also put

7  on specific notice of their violation of the SRR in October 2008.  Cutler Decl. ¶¶ 2-3.

8          Facebook has gathered evidence that Defendants have violated at least seven of the

9  provisions in its SRR, including (1) sending or otherwise posting spam on Facebook, (2)

10  collecting users' content or information, or otherwise accessing Facebook, using automated means

11  (such as harvesting, bots, robots, spiders, or scrapers) without Facebook's permission; (3) using

12  Facebook in an unlawful manner or in any other manner that could damage, disable, overburden,

13  or impair the Facebook website; (4) providing false personal information on Facebook or falsely

14  stating or otherwise misrepresenting oneself; (5) accessing another Facebook user's account; (6)

15  soliciting Facebook login information from Facebook users; and (7) using Facebook profiles for

16  commercial use.  Facebook Decl. at ¶ 7-8, 11-17.

17          As a result of Defendants' spamming and phishing activities, which breach Facebook's

18  SRR, ████████████████████████████████████████

19  ████████████████████████████████████████████

20  ████████████████████████████████████████████

21  ████████████████████████████████████████████

22  ████  Cutler Decl. ¶ 6; Facebook Decl. ¶ 18.

23          **2.        Facebook Will Suffer Irreparable Harm if Defendants Are Not Restrained**

24          Aside from any economic injuries it has suffered, Facebook has suffered, is suffering, and

25  will continue to suffer injuries such as loss of users, loss of potential users, loss of good will,

26  damage to its reputation, and ████████████████████████.  Facebook

27  Decl. ¶¶ 6, 10-11, 18-20.  Intangible injuries, such as evidence of threatened loss of customers or

28  loss of good will, support a finding of the possibility of irreparable harm.  *Stuhlberg Int'l Sales*

1    *Co., v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (citing *Tom Doherty Assocs., v.*

2    *Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995)); *Rent-a-Center, Inc. v. Canyon Television*

3    *& Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991); *MySpace,* 498 F. Supp. 2d at 1305-06.

4    Defendants' illegal and unauthorized acts, if allowed to continue unrestrained, have the

5    potential to undermine the core of Facebook's appeal to its users – the ability to interact with

6    friends in a private and secure online community.  Facebook Decl. ¶¶ 5-6, 10-11, 14-16, 18-20.

7

8

9    Unless Defendants are restrained, Facebook will be

10   irreparably harmed as a result of the continuing intangible injury inflicted on its ability to attract

11   users, its good will, its users' security, and its reputation.

**C.    Even if There Are Serious Questions on the Merits, the Balance of Hardships Tips Sharply in Facebook's Favor**

12

13   As shown in Section IV.B., Facebook has established entitlement to a temporary

14   restraining order by showing its probability of success on the merits and the possibility of

15   irreparable injury.  Thus, the Court does not need to address the second test, which looks to the

16   existence of "serious questions going to the merits," where the "balance of hardships tips sharply

17   in [the plaintiff's] favor."  *GoTo.com, Inc.*, 202 F.3d at 1204-05 (internal quotation marks and

18   citation omitted).  Nevertheless, Facebook is also entitled to a temporary restraining order under

19   this test because a balance of the hardships tips sharply in Facebook's favor.

20   Where a social networking site has already spent substantial time and money combating

21   unsolicited electronic mail messages and dealing with user complaints and has had difficulty in

22   curbing ongoing unauthorized and illegal activities, the balance of the hardships tips sharply in

23   that website's favor.  *MySpace,* 498 F. Supp. 2d at 1306.

24   If Defendants are allowed to continue, the impact on Facebook and its users will be

25   significant.  Every day that Defendants are allowed to continue their abuse of Facebook's

26   networks results in additional

27   , send spam to Facebook users, and misuse and abuse Facebook.  Facebook Decl.

28

1  ¶¶ 10, 12, 18-20.  Facebook must expend time and resources investigating and countering

2  Defendants' activities in a constant and ever-escalating series of moves and countermoves.  *Id.*

3  ¶¶ 10, 20.  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████  *Id.* ¶¶ 10-11, 14-16, 20.  In addition to the

5  monetary damage incurred in combating Defendants and repairing its network, Facebook also

6  suffers the intangible and irreparable injuries described in Section IV.B.2., above.

7      Pending a show cause hearing, Facebook seeks to enjoin Defendants from, among other

8  things, sending unsolicited commercial emails through Facebook computers and the Facebook

9  networks; soliciting and phishing Facebook usernames and passwords from Facebook users; and

10  accessing, with or without authorization, Facebook's website.  Almost all of the activities that

11  Facebook seeks to enjoin are illegal, including spamming, phishing, accessing websites without

12  authorization or in excess of authorization, and profiting from illegal actions. Defendants would

13  suffer no hardship from being prohibited from engaging in these illegal activities.  *MySpace,* 498

14  F. Supp. 2d at 1306 (finding that the sender of spam experiences no hardship where enjoined

15  from committing further CAN-SPAM violations).  Any limitation on Defendants' ability to ████

16  ████████████████████████████████, to violate the Facebook SRR, or to profit

17  from their illegal activities is clearly outweighed by Facebook's concerns.

**D.      The Public Interest Favors Facebook's Relief**

19      With 350 million members of the public as active Facebook users, there is a strong public

20  interest in protecting the privacy and security of Facebook's online community.

21      In evaluating whether the public interest supports a temporary restraining order based on a

22  statutory violation, courts may look to the underlying substantive policy of the governing statute.

23  *Amoco Prod. Co. v. Vill. of Gambell, Alaska.,* 480 U.S. 531, 544 (1987).  In this case, all four

24  statutes addressed above — CAN-SPAM, the CFAA, California's Comprehensive Computer

25  Data Access and Fraud Act, and California's Anti-Phishing Act — are based upon protecting the

26  public from unscrupulous and harmful activities.  *See, e.g.,* 15 U.S.C. § 7701(a) (detailing the

27  public interest in preventing spam); Cal. Penal Code § 502(a) (discussing protection of computers

28  and computer systems as "vital to the protection of the privacy of individuals" and other public

1   and private entities); *MySpace*, 498 F. Supp. 2d at 1306 (noting the public interest in the

2   enforcement of CAN-SPAM).  In addition, Facebook's breach of contract claim seeks to prohibit

3   Defendants from engaging in activities that not only breach the SRR but are also illegal under

4   these four statutes.  The public interest strongly favors Facebook's requested relief.

5   **E.      Minimal Bond Is Appropriate**

6           The Court has the discretion to require no bond or a minimal bond. Fed. R. Civ. P. 65(c).

7   Defendants will suffer no legal cognizable harm from issuance of the requested restraining order,

8   and no bond should be required.  Facebook is requesting only that Defendants stop their illegal

9   and unauthorized activities.  As such, this is a case where no bond is appropriate.    If the Court

10  requires a bond, Facebook submits that, at most, a minimal bond of no more than $5,000 will be

11  more than adequate and that it be given five days from the date the Temporary Restraining Order

12  is issued to post the bond.

13                              **V.      CONCLUSION**

14          Defendants' illegal practices, as recounted above, have caused substantial injury to

15  Facebook and to the public.  By this application, Facebook seeks to enjoin those practices and to

16  prevent further harm to its reputation, its good will, its relationships with its users, and the

17  security of user login information.  This temporary relief is expressly authorized by the federal

18  and state statutes upon which this action is brought.  For all of these reasons, Facebook

19  respectfully requests that the Court issue the proposed Temporary Restraining Order.

20

21  DATED:  December 15, 2009                **PERKINS COIE LLP**

22

23                                          By:  /s/
                                                _____
                                                Brian Hennessey

24                                          *Attorneys for Plaintiff Facebook, Inc.*

25

26

27

28

NOTICE OF MOTION AND MOTION FOR TRO
                                                                       Case No. C 09-05842 JF